UNITED STATES DISTRICT COURT    SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| MONIQUE DAVIS and PRISCILLA THOMAS, | § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. _____ |
| vs. | § § | |
| LIFE INSURANCE COMPANY OF NORTH AMERICA, | § § § | |
| Defendant. | § § | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

### I. Parties

1. The plaintiffs, Monique Davis [Ms. Davis], and Priscilla Thomas [Ms. Thomas], are individual citizens and residents of the State of Louisiana.

2. The defendant, Life Insurance Company of North America [LINA], is a non-Texas entity with its principal place of business in the State of Pennsylvania.  However, LINA has qualified to do business within the State of Texas and can be served through its Texas registered agent, CT Corporation System, at 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136.

### II. Jurisdiction and Venue

3. This action is for death benefits under an accidental death and dismemberment insurance policy secured through the employment of plaintiffs' decedent.  It is thus covered by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* [ERISA].  Accordingly, this court has jurisdiction over this action.  29 U.S.C. § 1132(e)(1).

4. At all relevant times LINA was authorized to engage in the business of issuing insurance within the State of Texas, was engaging in the business of issuing insurance in the State of Texas, and

the policy in issue in this cause was issued to a Texas insured, the employer of the plaintiffs' decedent. Accordingly, this court has *in personam* jurisdiction over LINA.

5. Pursuant to 29 U.S.C. §§ 1132(e)(2), 1391(b)(2), venue is appropriate in the United States District Court for the Southern District of Texas, Houston Division, situated in Harris County, Texas, because:

    a. the policy in issue was issued to a Texas insured;

    b. the individual insured covered under the policy in issue, the plaintiffs' decedent, was at the time of his death a resident of Harris County, Texas;

    c. the individual insured covered under the policy in issue, the plaintiffs' decedent, expired in Harris County, Texas;

    d. a substantial portion of the events or omissions giving rise to the claim occurred in Harris County, Texas;

    e. the defendant is subject to the personal jurisdiction of this court; and

    f. the defendant may be found in this jurisdiction.

### III. The LINA Policy

6. LINA issued an accidental death and dismemberment policy to all employees of Calcasieu Refining Company under Policy No. OK 80 72 33 with an effective date of September 1, 1989. [the AD&D Policy]. A true and correct copy of the AD&D Policy is attached as Exhibit A, and is incorporated herein in its entirety by reference.

7. The AD&D Policy provides that LINA is obligated to pay the principal sum of the policy, $250,000, to the named beneficiaries for the death of any covered employee who might die as a result of any accident, so long as the insured dies within 365 days of the date of the accident.

8. All terms and provisions of the AD&D Policy were drafted exclusively by LINA.

9. In the AD&D Policy, LINA elected:

a. <u>not to</u> provide itself with any discretion in interpreting the terms of the policy; and

b. <u>not to</u> define the term "accident."

10. The plaintiff's decedent, Larry James Thomas [Mr. Thomas], was employed until the date of his death at Calcasieu Refining Company and therefore was an insured under the AD&D Policy.

11. Ms. Davis and Ms. Thomas were the beneficiaries named by Mr. Thomas in the AD&D Policy.

### IV. Undisputed Facts Establishing Coverage

#### a. The Accidental Death

12. On July 31, 2015, Mr. Thomas was lethally injured in an unintended accident that occurred at CHI St. Luke's Hospital in Houston, Harris County, Texas [St. Luke's Hospital].

13. The accident in issue occurred during a surgery being performed on Mr. Thomas at St. Luke's Hospital, while Mr. Thomas was unconscious as a result of the administration of general anesthesia.

14. As a result of unintended medical errors that occurred during the surgery, Mr. Thomas suffered severe, permanent, and irreversible brain damage on July 31, 2015.

15. The medical errors that occurred during the surgery were completely unexpected and unintended, both from the perspective of Mr. Thomas and all the medical personnel involved.

16. Mr. Thomas never recovered from the injuries of July 31, 2015.

17. As a direct result of the brain damage of July 31, 2015, Mr. Thomas died at St. Luke's Hospital on November 28, 2015.

18. But for the accident that occurred during the surgery of July 31, 2015, Mr. Thomas would not have died on November 28, 2015.

### a. The Claim

19. A timely claim for benefits under the AD&D Policy was made in December 2015. However, no action was initially taken by LINA on the claim due to confusion between Mr. Thomas' employer and LINA as to the coverage available under the AD&D Policy.

20. LINA made a purposeful decision in 2016 not to notify the beneficiaries that LINA was no longer actively processing the claim for benefits.

21. Counsel for Ms. Davis and Ms. Thomas later made an inquiry by letter on LINA regarding the status of the claim. In response to the inquiry LINA reopened the claim and initiated an investigation to determine whether the claim should be paid under the terms of the AD&D Policy. Additional documentation was requested, which was timely provided.

22. In investigating the matter, LINA made no effort to have the matter reviewed by any medical expert, instead relying solely on:

    a. LINA's internal, non-medical evaluation of the patient's medical records;

    b. the death certificate; and

    c. a single phone call to the Harris County Institute of Forensic Science, which merely confirmed it had no information regarding the case.

### d. The Denial

23. On August 7, 2020, LINA denied the claim for benefits, solely on the bases of allegations that, under LINA's interpretation of the policy language and applicable facts:

    a. Mr. Thomas did not die as the result of an "accident" covered under the AD&D Policy, but rather from "natural causes";

    b. if *any* natural cause played *any* role in the death of an insured, the AD&D Policy would not cover the claim even if an accident was the *only* "but for" cause of the death;

    c. no injury that occurs during a surgery can ever be considered an "accident" under this AD&D policy or indeed, under any AD&D policy; and

    d.  this claim is defeated by the "sickness exclusion" under the AD&D policy in issue.

24. The denial invited an administrative appeal, which could include any additional relevant documentation or expert medical or forensic opinions.

### d. The Appeal

25. A timely administrative appeal was made by Ms. Davis and Ms. Thomas on October 30, 2020. The appeal contained a lengthy brief explaining how the denial decision was contrary to binding Fifth Circuit interpretations of the language employed in this type of AD&D policy. The administrative appeal also provided two additional medical and forensic opinions, from Dr. Duane J. Funk and Dr. Robert C. Bux, confirming and explaining in great detail that Mr. Thomas' death was unquestionably caused by an accident.

26. On December 31, 2020, LINA denied the administrative appeal. In doing so, LINA capriciously and arbitrarily dismissed and disregarded the medical and forensic opinions submitted, ignored the legal arguments as to why the denial was unjustified under binding Fifth Circuit precedent, and again denied the claim on the same bases as the August 7, 2020, denial.

### e. Exhaustion of Administrative Remedies

27. Plaintiffs have exhausted all administrative remedies available under the AD&D Policy.

### f. Satisfaction of Conditions Precedent

28. All conditions precedent to this cause of action have been met or have occurred.

### V. Cause of Action – Count I
### Wrongful Denial of Benefits Under ERISA, 29 U.S.C. § 1132

### a. The Wrongful Denial

29. The allegations of paragraphs 1-28 above are incorporated here by reference.

30. LINA was obligated to perform its claim-handling functions in a fair, honest, and objective manner.

31. LINA failed to carry out that obligation in this instance.

32. The denial of the claim by LINA was wrongful. Accordingly, the plaintiffs are entitled to judgment against LINA for the full benefits due under the AD&D Policy in accordance with 29 U.S.C. § 1132(a)(1)(B).

### b. The Standard of Review

33. Because the AD&D Policy does not provide LINA with discretion in interpreting the provisions of the AD&D Policy, this case requires a *de novo* review by this court. *Firestone Tire & Rubber Co. v. Bruch,* 49 U.S. 101, 115 (1989); *Ariana M. v. Humana Health Plan of Texas,* 884 F.3d 246, 255-56 (5th Cir. 2018) (*en banc*). Indeed, even had the AD&D Policy provided such discretion to the Plan, it would have been a nullity under Texas law. *Rittinger v. Healthy Alliance Life Ins. Co.,* 914 F.3d 952, 955 (5th Cir. 2019) (*citing* TEX. INS. CODE § 1701.062).

34. Absent such discretion, either by the terms of the policy or applicable law, both the legal and factual determinations by the plan are entitled to no deference under this *de novo* review. *Bruch,* 49 U.S. at 115; *Ariana M.,* 884 F.3d at 255-56; *Batchelor v. Life Ins. Co. of N.A.,* 2020 U.S. Dist. LEXIS 223927, 2020 WL 7043476 (S.D. Tex. 2020).

35. The determination as to whether the plaintiffs are entitled to recovery of benefits under the AD&D Policy turns entirely on whether Mr. Thomas died as a result of an "accident." That must be determined by the language of the AD&D Policy applied to binding legal precedent. In making that determination, the court is limited to consideration of the documents and records in the file at the time the determination was made. *Ariana M.,* 884 F.3d at 256-257.

36. Interpretations of policy language must be consistent with the treatment of those terms by the relevant courts. *Bruch*, 489 U.S. at 115. It is always unsustainable and an abuse of discretion

for policy language to be construed inconsistently with prevailing law. *Id.; Wade v. Hewlett-Packard Dev. Co. LP Short Term Disability Plan,* 493 F.3d 533, 537 (5th Cir. 2007).

37. Because the AD&D Policy was issued to a Texas insured and the insured expired in Texas, the resolution of the dispositive legal issues must be decided using precedent from the United States Court of Appeals for the Fifth Circuit. *Southeast Tex. Envtl., LLC v. BP Amoco Chem. Co.,* 329 F.Supp.2d 853, 868 (S.D. Tex. 2004); *Luna v. Compania Panamena De Aviacion, S.A.,* 851 F.Supp. 826, 830 (S.D. Tex. 1994).

38. In interpreting ERISA policies the Fifth Circuit applies the doctrine of *contra proferentem.* This mandates that any ambiguities in the policy language be resolved against the insurer. In other words, the policy *must* be construed in favor of coverage if such an interpretation can reasonably be made under the language employed. *Ramirez v. Omaha Life Ins. Co.,* 872 F.3d 721, 727-28 (5th Cir. 2017); *Todd v. AIG Life Ins. Co.,* 47 F.3d 1448, 1451-52 (5th Cir. 1995); *Ramsey v. Colonial Life Ins. Co. of Am.,* 12 F.3d 472, 479 (5th Cir. 1994); *Hansen v. Continental Ins. Co.,* 940 F.2d 971, 982 (5th Cir. 1991).

### c. The Insuring Language Provides Coverage

39. Under the above authorities, if there is any reasonable interpretation of the term "accident" in which an injury sustained due to an inadvertent error by medical personnel during a surgery could be construed as an "accident," then coverage must be afforded under the AD&D Policy.

40. There are two important considerations with regard to the insuring language in the policy in issue. First, LINA chose not to define the term "accident" in its policy. That is critical because relevant case law clearly does not permit LINA to self-define the term in its favor, after the fact, to exclude medical accidents. *See, e.g., Bryner v. E.I. DuPont de Nemours & Co.,* 914 F.Supp.2d 755, 762 (E.D.Va. 2013).

41. Second, the insuring language of many AD&D policies provides that for coverage to apply the death must result "solely and exclusively" from the accidental cause, without contribution from any other cause. LINA chose not to include such limiting language in its policy, and relevant case law again precludes LINA from doing so now under the guise of interpretation. *See, e.g., Michael J. Borrelli Family Trust v. UnumProvident Corp.,* 2002 U.S. Dist. LEXIS 722, 2002 WL 53935 (N.D. Ill. 2002).

42. In this Circuit, when undefined in the policy the term "accident" in an ERISA case must be decided on the basis of the expectation of the decedent, using a "common man" approach:

> under this approach "the common man in the street regards an accident as being something unintended, not according to the usual course of things, or not as expected." Because "it is undisputed that the insured did not expect to die … in the common understanding of man Timothy Parker's death would be regarded as accidental."

*Todd v. AIG Life Ins. Co.,* 47 F.3d 1448, 1455 n.8 (5th Cir. 1995) (citations omitted).

43. The two physicians who were attending Mr. Thomas at the time of his death, Dr. Christopher Howard and Dr. Walter Shakespeare, both concluded at the time that the death of Mr. Thomas was the result of the brain injury he sustained during the surgery of July 31, 2015. This was ignored by LINA in denying the claim.

44. Two other physicians were directly asked whether Mr. Thomas' death was caused by an "accident." They both agreed unequivocally that it was, and explained their reasoning in great detail. There are no conflicting opinions anywhere in the file considered by LINA.

45. The first expert who opined on the accidental nature of Mr. Thomas' death is a leading expert anesthesiologist, Dr. Duane J. Funk. Dr. Funk stated the following:

> At the time he entered the hospital, Mr. Thomas was a working man, only 46 years of age. He did not have any respiratory difficulties, much less ARDS. He did not have any reported history of a GI bleed, nor was he hypotensive or septic. There is no reason to think that Mr. Thomas would have developed

> any of these problems if he had not sustained the brain injury of July 31, 2015, which eliminated his mobility and severely reduced his capacity. I have seen nothing in Mr. Thomas' medical chart that would indicate any of the treating physicians thought Mr. Thomas probably would have died on November 28 if he had not sustained the severe life-threatening injuries on July 31, 2015.
>
> There is no indication that the mistakes made by the medical team during and after the surgery of July 31, 2015, were anything other than inadvertent. The team was trying to help Mr. Thomas, not hurt him, and the tragic errors that were made were certainly accidental in nature.
>
> It is my opinion, in terms of reasonable medical probability, that the injury Mr. Thomas suffered in the perioperative period of July 31, 2015, was the principal factor in his death four months later. Mr. Thomas died as a result of complications from the accidental injury he sustained on July 31, 2015. But for the medical accidents that occurred on July 31, 2015, Mr. Thomas would not have died on November 28 from the complications associated with and caused by that injury.

46. The second physician who concluded this was clearly an accidental death is a highly qualified forensic pathologist, Dr. Robert Bux. Dr. Bux opined — in an eleven-page detailed and illustrated report — that all of the medical conditions that were present at the time of the death of Mr. Thomas were the direct result of the accidental brain injury he sustained on July 31, 2015, and that it is beyond argument this was an "accidental death":

> Forensic pathologists classify injuries as either accidental or intentional. Accidental injuries are those injuries that are unexpected and unintended, from the perspective of the person who caused the injury, the victim, or both. Intentional injuries are of course the opposite.
>
> While the decision to submit to surgery where an intraoperative injury occurs was volitional, no patient in Mr. Thomas' position would consent to a surgery in which it was expected he was likely to be the victim of life-threatening accident by his health care providers. To the contrary, it is clear from the chart that Mr. Thomas went into the surgery of July 31 with high expectations it would be successful and lead to a kidney transplant that would allow him an improved quality of life for many years. Thus, from Mr. Thomas' perspective, it is really beyond argument that the injury that occurred in the surgery of July 31 was anything but an accidental injury.
>
> Similarly, decisions as to how much insulin to administer intraoperatively and how frequently to check the patient were intentional acts on the part of

the health care providers. However, there is absolutely nothing in the medical chart that would indicate any of these health care providers intended to injure the patient. In fact, it would be ludicrous to suggest that these dedicated health care workers, who were devoted to trying to improve and extend this patient's life, intended to cause him lethal harm. The mistakes of these health care providers could be classified as "negligence," "errors," "breaches in the standards of care," "medical mishaps," or "accidents." In this context, those are all equivalent synonymous terms.

\* \* \*

At the time he entered the hospital, Mr. Thomas was a relatively young man with full mobility. He was not noted to have any respiratory difficulties, much less ARDS. He did not have any reported history of a GI bleed, nor was he hypotensive, hypovolemic, anemic, or septic. There is no reason to think that Mr. Thomas would have developed any of these problems if he had not sustained the brain injury of July 31, which effectively eliminated his mobility and severely reduced his physical and mental capacities.

\* \* \*

Clearly, the physicians involved with Mr. Thomas' death, Drs. Shakespeare and Howard, agreed that all of the complications that caused the family to discontinue heroic care on November 28 were caused by the encephalopathy incurred during the surgery of four months earlier, and I fully agree. The hypoglycemic brain insult Mr. Thomas suffered in the surgery of July 31, 2015, was accidental in nature, both from the perspective of the patient and the health care providers. Mr. Thomas' diabetes and ESRD, although they brought him initially to the hospital for treatment on July 30, were not causes of his death. The two complications that were mentioned as contributing causes for Mr. Thomas' death, hypovolemic shock and ARDS, were both clearly and inarguably caused by the brain injury of July 31, as explained above. Thus, it is my opinion, in terms of reasonable medical probability, that Mr. Thomas suffered an accidental death as a result of the medical mistakes of July 31, 2015. But for the medical accidents that occurred on that date, in reasonable medical probability Mr. Thomas would not have died on November 28, 2015.

47. LINA acknowledged the opinion of Dr. Funk with respect to the accidental cause of Mr. Thomas' death, but then simply ignored it.

48. With regard to the detailed opinions of Dr. Bux, despite having no evidence that would refute one word of Dr. Bux's opinions, LINA ignored it as well, claiming:

> The determination of a Manner of Death as "Accident" by a forensic pathologist is not dispositive of a beneficiary's rights under this policy…. [T]he forensic pathologist determination is made for societal and law enforcement purposes, and is not made with a view toward applying the terms of a policy of insurance…. [T]he forensic pathologist determination is not binding on third-parties who have no voice or input into the forensic pathologist investigative and determinative process….

49. LINA's denial of this claim on the basis that an accident which occurs during the course of medical treatment can never be a covered accident under this AD&D Policy or any AD&D policy is inconsistent with prevailing law. To the contrary, the Fifth Circuit has expressly directed that such blanket rules are inappropriate when interpreting the term "accident" in a policy covered by ERISA.

50. In *Firman v. Beacon Constr. Co.,* 789 F.Supp.2d 732, 742 (S.D. Tex. 2011), *op. adopted,* 684 F.3d 533 (5th Cir. 2012), the insured died of blunt force injuries suffered in a car wreck that was caused by the insured's severe intoxication (0.35% blood alcohol concentration). The same carrier involved in this case, LINA, denied the claim, contending that because the insured chose to drive while intoxicated, the wreck that resulted in his death was no accident and therefore was not a covered accidental death. *Id.* at 736.

51. In contrast to the policy in this case, the policy in issue in *Firman* provided the administrator discretion in interpreting plan language. *Id.* at 740. Just as in the case at hand, though, the policy in issue in *Firman* did not define the word "accident." The court found that LINA had improperly relied on case authority involving policies that expressly defined the word "accident." *Id.* at 741.

52. The *Firman* Court expressly adopted the test set out by the First Circuit in *Wickman v. Northwest Nat'l Ins. Co.,* 908 F.2d 1077, 1088 (1st Cir. 1990). Under that test, to be considered accidental, "the insured must have had a subjective expectation of survival, and that

expectation must have been reasonable from the perspective of the insured, allowing the insured a great deal of latitude and taking into account the insured's personal characteristics and experiences." *Firman,* 798 F.Supp.2d at 742. If the intent of the insured in that regard cannot be ascertained (because for example as in this case the insured expired after the death-causing event without attaining consciousness), the test is whether a reasonable person, with background and characteristics similar to the insured, would have viewed the death-causing injury as "highly likely to occur as a result of the insured's intentional conduct." *Firman,* 789 F.Supp.2d at 742. The court squarely rejected LINA's interpretation of the policy as an abuse of discretion:

> LINA's interpretation eschews the *Wickman* approach to defining accident, and is therefore legally incorrect. In *Wickman*, the starting point was the actual expectation of the insured, limited only by excluding 'patently unreasonable' expectations from the definition of "accident," which equates to situations where death or serious injury is "highly likely."

*Id.*

53. LINA appealed the district court's interpretation of the AD&D policy in *Firman*. The Fifth Circuit, in a *per curiam* opinion, not only affirmed the district court, but went out of its way to approve the specific analysis as to how the term accident must be determined in this circuit:

> In this ERISA case, the Life Insurance Company of North America (LINA) appeals the decision of the district court holding that LINA abused its discretion in its denial of benefits to the appellee, Deborah Firman. We have carefully reviewed the district court's opinion, heard oral arguments, and considered the arguments in the parties' briefs; and we are convinced that the district court correctly applied the law to the relevant facts and reached the appropriate legal conclusions. We emphasize the district court's holding that the common law definition of "accident" adopted in *Todd v. AIG Life Insurance Co.*, is controlling in ***all*** ERISA accidental death and dismemberment plans where the term "accident" is undefined, irrespective of whether the plan administrator is given discretion to interpret the plan. We therefore adopt the clear and well-reasoned opinion of the district court, a copy of which we attach hereto, as the opinion of this Court.

*Firman,* 684 F.3d at 533 (emphasis added).

54. Notably, the Fifth Circuit did not limit the opinion in *Firman* to just deaths arising from wrecks caused by intoxicated drivers. Rather, the Court was very specific in noting that the definition of "accident" applied in *Todd* was equally applicable to *all* ERISA AD&D policies where the term accident is undefined. *Firman,* 684 F.3d at 533.

55. The message was delivered once again to LINA three years later in *James v. Life Ins. Co. of N. Am.,* 2015 U.S. Dist. LEXIS 89131 (S.D. Tex. 2015). In that case LINA was again presented with a claim involving a death of an intoxicated driver. Ignoring *Firman,* the administrator denied the claim, applying a *per se* rule that any wreck caused by a driver's severe intoxication was not an accident and, further, that the death was an excluded self-inflicted injury. *Id.* The magistrate soundly rejected both claims, and her opinion was later approved and adopted by the district court.

56. Relying on *Firman* and *Todd,* the court in *James* agreed that terms in an ERISA policy that are undefined must be interpreted in "'their ordinary and popular sense as would a person of average intelligence and experience,' in other words, 'as they would likely be understood by the average plan participant.'" *James,* 2015 U.S. Dist. LEXIS at 89131 (also *citing Smith v. Life Ins. Co. of N. Am.,* 459 Fed. App'x 480, 484 (5th Cir. 2012)).

57. It does not matter whether the accident occurred during the course of medical treatment. The focus must be exclusively on whether the death-causing event was unexpected and unintended from the perspective of the insured. That cannot be determined simply by focusing on the identity of the person or specific activity that caused the death. To quote the Fourth Circuit Court of Appeals:

> Death must be caused by an accident before the accidental death benefits of the policy come into play. *An accident is an unintended occurrence. If such happens during medical treatment, it is still an accident*….

*Whetsell v. Mutual Life Ins. Co.*, 669 F.2d 955, 957 (4th Cir. 1982) (emphasis added).[1]

58. The clear and unmistakable lessons of *Firman, Todd*, and *James* are that: (a) when the term "accident" is undefined in an ERISA AD&D policy, that term must be interpreted in accordance with the expectation that would reasonably be anticipated by a common man in looking at what he was getting in an accidental death policy; and (b) in making that determination, the courts can only look at whether the death was the expected result of the activity in issue or an unintended and unexpected event, subjectively if possible or objectively if not, applying a common man expectation standard.

59. Under these prevailing standards and the undisputed evidence, Mr. Thomas suffered a covered accidental death and the claim should not have been denied.

### d. The "Sickness Exclusion"

60. LINA also denied the claim on the basis of an exclusion in the AD&D Policy for deaths "resulting from sickness, disease or bodily infirmity." [the Sickness Exclusion]. However, it is clear from the AD&D Policy that LINA intended to cover deaths that were set into sequence by an accidental cause, even when the actual death occurred at a remote time from the accidental injury and without regard to whether there were any other sicknesses, illnesses, or diseases that may exist at the time of death.

61. Under the clear and unequivocal language of the AD&D Policy, so long as the death is the result of an accident and occurs within 365 days of that accident, it is covered, with no further limitations or restrictions. More specifically, the insuring language of this policy provides that

---

[1] In *Whetsell* coverage was ultimately denied, but *only* because the policy language in that case specifically required that the death occur by accident "independently of all other causes," and because the sickness exclusion specifically precluded coverage for an accidental death arising from treatment or injury for disease. This is critical language that does not exist anywhere in the AD&D Policy in this case. *Id.* at 956-57. *Accord, Bryner*, 914 F.Supp.2d 755 (E.D. Va. 2013).

a death claim is covered if the insured dies "within 365 days from the date of accident covered by the policy…."[2] This clearly contemplates an injury that leads to complications and ultimately a death, caused both by the injury and the resulting complications:

> To take the undisputed facts of this case step-by-step, it is unquestionable that the decedent suffered an [sic] wound to her foot that constituted an "injury" under the policy because it was a "bodily injury resulting directly from accident and independently of all other causes." That injury resulted in her death two months later, and death is an enumerated "loss" under the policy. The policy expressly provides coverage for any "injury" that results in a "loss" within 365 days of the accident. Even if the Court were to assume, for argument's sake, that the decedent's diabetes substantially contributed to the loss -- or even that the loss would not have occurred but for the diabetes -- this does not change the result, because the loss (death) resulted from the injury (the wound) within 365 days and nothing in the policy requires that the loss directly and independently arise as a result of the injury.

*Joseph v. Hartford Life & Acc. Ins. Co.,* 2010 U.S. Dist. LEXIS 151789 (S.D. Fl. 2010). *See also* 10 COUCH ON INS. § 141:25 (3d ed. Dec. 2019 update) ("[D]iseases or conditions themselves attributable to the accident do not fall within an exclusionary provision for loss caused by disease or the like, since these conditions are the direct result of the accident.")

62. At a minimum, the interpretation of the undefined term "accident" in the AD&D Policy by the claimants to be inclusive of accidental injuries during surgery is not unreasonable. Accordingly, it is the interpretation that must be accepted by the courts under the doctrine of *contra proferentem. Ramirez,* 872 F.3d at 727-28; *Todd,* 47 F.3d at 1451-52; *Ramsey,* 12 F.3d at 479; *Hansen,* 940 F.2d at 982.

### e. LINA's Awareness of the Limitations of the Language in the AD&D Policy

63. This analysis is no surprise to LINA. The policy in issue is a very old policy form. On its face the policy reflects the form was created on April 16, *1982*. Since that time, the courts have repeatedly interpreted AD&D policies to the following effects for deaths from a concurrent

---

[2] *See* Ex. A., the AD&D policy, p. LM-2L72.

cause, one a covered accident and one or more not: (A) to exclude coverage for a death with multiple contributing clauses the insuring language *must* indicate the death be caused *only* by the accidental cause, *directly and independently of any other cause*;[3] and (B) to exclude a claim arising from a death from a medical mishap a "sickness exclusion" must expressly extend to deaths from medical treatment.[4]

64. But the 1982 AD&D policy form of LINA satisfied neither requirement. Accordingly, LINA modified its standard AD&D policies. For example, in 2008, LINA issued an ERISA AD&D policy to the City of San Jose, California. Not only did LINA eliminate the language that the death could occur a year after the accidental injury, but the insuring language in this policy was also modified from the 1982 form as follows:[5]

> **Covered Accident**
> A sudden, unforeseeable, external event that results, directly and independently of all other causes, in a Covered Injury or Covered Loss and meets all of the following conditions:
> 1. occurs while the Covered Person is insured under this Policy;
> 2. is not contributed to by disease, Sickness, mental or bodily infirmity;
> 3. is not otherwise excluded under the terms of this Policy.
>
> **Covered Injury**
> Any bodily harm that results directly and independently of all other causes from a Covered Accident.
>
> **Covered Loss**
> A loss that is all of the following:
> 1. the result, directly and independently of all other causes, of a Covered Accident;
> 2. one of the Covered Losses specified in the *Schedule of Covered Losses*;
> 3. suffered by the Covered Person within the applicable time period specified in the *Schedule of Benefits*.

65. So clearly at the time it denied this claim, LINA was acutely aware the policy language in this AD&D Policy was insufficient to disallow coverage for a death caused by an accident just because the accidental injury was accompanied by some illness, disease, or bodily infirmity.

---

[3]     *See, e.g., Wells v. Minnesota Life Ins. Co.,* 885 F.3d 885, 888 (5th Cir. 2018); *Whetsell.,* 669 F.2d at 957; *Firman,* 789 F.Supp.2d at 742.

[4]     *See, e.g., Whetsell,* 669 F.2d at 956-57; *Bryner,* 914 F.Supp.2d at 762; *Barnes v. American Int'l Life Assur. Co.,* 681 F.Supp.2d 513, 527 (S.D. N.Y. 2010); *Michael J. Borrelli Family Trust,* 2002 U.S. Dist. LEXIS at 722, 2002 WL at 53935.

[5]     *See* Ex. B, p. 4 of 21.

Yet, LINA attempted to "self-craft" the exclusionary language into the policy as a pretextual basis to wrongfully deny coverage. To quote the district court in Virginia under a very similar situation:

> First and foremost, DuPont fundamentally abused its discretion in this case when it based its decision on a self-crafted extra-textual definition of the word "accident"….
>
> [A]llowing DuPont to change its definition of core terms at will undermines ERISA's goal of "careful[ly] balancing between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans."

*Bryner,* 914 F.Supp. 2d at 960, 961 (quoting *Conkright v. Frommert*, 559 U.S. 506, 130 S. Ct. 1640, 1649, 176 L. Ed. 2d 469 (2010)).

66. Just as with respect to the deficiency of the insuring language in the subject policy, LINA is similarly aware that the "sickness exclusion" language it chose to employ in the 1982 policy is insufficient to exclude coverage for a death concurrently caused by a medical accident. In the 2008 LINA policy issued to the City of San Jose, LINA changed the wording to allow it to reach the result LINA is attempting to reach here:[6]

**COMMON EXCLUSIONS**

In addition to any benefit-specific exclusions, benefits will not be paid for any Covered Injury or Covered Loss which, directly or indirectly, in whole or in part, is caused by or results from any of the following unless coverage is specifically

4. Sickness, disease, bodily or mental infirmity, bacterial or viral infection or medical or surgical treatment thereof, except for any bacterial infection resulting from an accidental external cut or wound or accidental ingestion of contaminated food;

67. To quote the federal district court in the Southern District of New York: "if an insurer wants to exclude losses from 'medical or surgical treatment,' it knows how to do so. Here, no such language was included in the Policy." Barnes, 681 F.Supp.2d at 527. The same result must follow with respect to the AD&D Policy in issue, in which LINA chose not to extend the

---

[6] Ex. C, p. 9 of 21.

exclusion to death resulting from medical treatment. LINA now attempting to "self-craft" the exclusion to extend extra-textually to deaths caused by accidents while receiving medical treatment is insupportable. *Bryner,* 914 F.Supp. 2d at 960, 961.

### f. Conclusion on Wrongful Denial of Benefits

68. LINA's denial of this claim, either on the basis of the insuring language or the "sickness exclusion," was wrongful and inconsistent with the standards mandated in this circuit.

### VI. Cause of Action – Count II
### Attorneys' Fees and Costs

69. The allegations of paragraphs 1-68 above are incorporated here by reference.

70. Because LINA wrongfully denied the claim the plaintiffs were forced to retain legal counsel to pursue their rights, for which the plaintiffs have incurred and will continue to incur attorneys' fees.

71. The plaintiffs are entitled to recovery of their reasonable attorneys' fees and costs in this action, pursuant to 29 U.S.C. § 1132(g)(1). *Hardt v. Reliance Std. Ins. Co.,* 560 U.S. 242 (2010); *1 Lincoln Fin. Co. v. Metro Life Ins. Co.,* 428 Fed. Appx. 394 (5th Cir. 2011).

### VII. Conclusion

72. For the reasons as set out above, the plaintiffs, Monique Davis and Priscilla Thomas, respectfully pray the court reverse and render the denial decision of LINA with regard to the claim in issue, and award judgment in the principal amount of the AD&D Policy, plus interest at the lawful rate.

73. The plaintiffs also request they be awarded their attorneys' fees in pursuing this matter.

74. The plaintiffs finally request all such other and further relief to which they may be entitled in this matter, by law or in equity.

Respectfully submitted,

s/ Timothy D. Riley

_____

Timothy D. Riley
Attorney-in-Charge
State Bar No. 16931300
Southern District of Texas Bar No. 521
112E. 4th St.
Houston, TX 77007-2502
(713) 646-1000
Fax (800) 637-1955
E-mail tdr@txtrial.com

ATTORNEY FOR PLAINTIFFS

**MONIQUE DAVIS and PRISCILLA THOMAS**

Of Counsel:

**RILEY LAW FIRM**
112 E. 4th St.
Houston, TX 77007-2502